## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| STREAM TV NETWORKS, INC., | : | Case No. 21-10848 (KBO) |
| | : | |
| Alleged Debtor. | : | |
| _____ | : | |
| STREAM TV NETWORKS, INC., | : | |
| | : | |
| Appellant, | : | |
| v. | : | Civ. No. 21-889-RGA |
| | : | |
| SEECUBIC, INC. and SLS HOLDINGS, VI, LLC, | : | |
| | : | |
| Appellees. | : | |

---

## <u>MEMORANDUM ORDER</u>

Before the Court is the *Emergency Motion for Stay Pending Appeal of Order Granting Emergency Motion for an Order Dismissing Involuntary Chapter 7 Case* (D.I. 3) ("Emergency Stay Motion"), filed by Stream TV Networks, Inc. ("Stream"), which seeks a stay pending appeal of the Bankruptcy Court's order, entered on June 10, 2021 (D.I. 1-1) ("Order") dismissing the involuntary petition under Chapter 7 for the reasons articulated in the Bankruptcy Court's bench ruling on June 10, 2021 (D.I. 3-1, 6/10/2021 Hr'g Tr., 63:8-65:6) ("Chapter 7 Dismissal Ruling"). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons set forth below, Emergency Stay Motion is denied.

1.  **Background.** Stream is controlled primarily by Mathu Rajan and his brother Raja. Since 2009, Stream raised approximately $160 million from third parties, including through a series of secured notes issued to appellee SLS Holdings VI, LLC ("SLS") and Hawk Investment Holdings Limited ("Hawk"). Stream pledged all of its assets and the assets of its wholly-owned

subsidiaries as security for those notes, and executed security agreements authorizing SLS and Hawk to take control of Stream's assets to satisfy the notes if Stream defaulted, which it did in February 2020. *See Stream TV Networks, Inc. v. SeeCubic, Inc.*, 2020 WL 7230419 (Del. Ch. Dec. 8, 2020) ("Chancery Opinion") at *3-4.

2. Shortly thereafter, four outside directors were appointed to Stream's board, and the board established a "Resolution Committee" that, on May 6, 2020, approved Stream's entry into an Omnibus Agreement, with SLS, Hawk, and certain equity investors. The Omnibus Agreement generally provided that, in lieu of foreclosure, SLS and Hawk would accept delivery of Stream's assets in satisfaction of their debts, which was accomplished via a transfer of those assets to an entity controlled by SLS and Hawk – *i.e.*, appellee SeeCubic, Inc. ("SeeCubic" and together with SLS, "Appellees"). *Id*. at *4-5.

3. Stream (controlled by the Rajans) commenced a Chancery Court Action on September 8, 2020, seeking a determination that the Omnibus Agreement was invalid. Stream argued that the directors who approved the agreement were never validly appointed; the agreement was invalid because it constituted a sale of all of Stream's assets which under Section 271 of the Delaware General Corporation Law required stockholder approval; under its certification of incorporation the agreement required the separate approval of the holders of the majority of the Class B common stock; and finally, that members of the resolution committee breached their fiduciary duties by approving the agreement. SeeCubic filed a competing request for an injunction.

4. In its December 8, 2020 opinion, the Chancery Court determined that the Omnibus Agreement – and thus the transfer of Stream's assets to SeeCubic – was valid and binding under Delaware law. *See id*. at *1. Moreover, in light of the Rajans' repeated attempts to undermine and terminate the Omnibus Agreement, the Chancery Court also preliminarily enjoined Stream and the Rajans from interfering with the parties' rights and obligations under the Omnibus

Agreement. *Id*. at *2. The Chancery Court further held that the evidentiary record would also support entry of final summary judgment in favor of SeeCubic. *Id*. at *24. SeeCubic was scheduled to file its reply brief in support of summary judgment ( "Summary Judgment Reply") – the last event to occur before the Chancery Court could enter a final order – on February 26, 2021. On February 24, 2021, however, Stream commenced its voluntary Chapter 11 Case in the Bankruptcy Court. (Ch. 11 D.I. 1).[1]

5.      On March 12, 2021, Appellees filed a motion to dismiss the Chapter 11 Case (Ch.11 D.I. 46), alleging that the Chapter 11 Case was commenced in bad faith to forestall entry of judgment in the Chancery Court Action. On March 24, the United States Trustee filed a similar motion (Ch. 11 D.I. 84). On April 30, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case ( "UCC") joined in the motions to dismiss. (Ch. 11 D.I. 159).

6.      The Bankruptcy Court allowed several weeks of discovery and the held a two-day trial on May 10 and 11, 2021. On May 17, 2021, the Bankruptcy Court issued its bench ruling dismissing the Chapter 11 Case. (D.I. 13-1, 3/17/2021 Hr'g Tr. at 4:2-20:7) ("Chapter 11 Dismissal Ruling"). The Bankruptcy Court concluded that Stream failed "to show that the bankruptcy filing was filed in good faith and for a legitimate bankruptcy purpose," and instead found the filing was "designed to stop SeeCubic and the debtor's secured creditors from fully implementing the omnibus agreement, to unravel it and to avoid the Chancery Court's order and, very likely, a mandatory injunction." (*Id*. at 19:8-16).

7.      The Bankruptcy Court determined that dismissal would be without prejudice but it explained that "any future filing would occur after the completion of the Chancery Court litigation

---

[1] Citations to "Ch. 11 D.I. __" are to Stream's prior voluntary chapter 11 case, No. 21-10433(KBO) (Bankr. D. Del.) (the "Chapter 11 Case"). Citations to "Ch. 7 D.I. __" are to Stream's involuntary chapter 7 case at issue in this appeal, No. 21-10848 (KBO) (Bankr. D. Del.) (the "Chapter 7 Case").

and the omnibus agreement's asset transfers. (*Id*. at 19:17-20:2). The Bankruptcy Court further rejected Stream's motion for a stay pending appeal, finding that granting such relief would be tantamount to "acting as complicit in the bad faith filing." (*Id*. at 22:10-18). The same day, the Bankruptcy Court entered an order memorializing its ruling. (Ch. 11 D.I. 198, "Chapter 11 Dismissal Order"). On May 21, 2021, Stream filed its notice of appeal of the Chapter 11 Dismissal Order, which appeal is currently pending in this Court at Civ. No. 21-723 (RGA) (D. Del.). Stream did not seek a stay pending appeal in this Court.

8. Less than one week later, on May 23, 2021, three alleged creditors ("Petitioning Creditors") filed an involuntary Chapter 7 petition against Stream (Ch. 7 D.I. 1, "Chapter 7 Petition"). None of the Petitioning Creditors objected to dismissal of the prior Chapter 11 case. On May 27, 2021, Appellees filed their motion to dismiss the Chapter 7 Case (Ch. 7 D.I. 5). On June 6, 2021, Petitioning Creditors filed an objection to the motion to dismiss. (Ch. 7 D.I. 22).

9. On June 8, two days after the objection deadline, Stream (Ch. 7 D.I. 27) and VTI6 (Ch. 7 D.I. 26) both filed objections to the motion to dismiss. Those objections asserted that Stream intended to seek conversion of the Chapter 7 Case to a new voluntary Chapter 11 case, despite the Bankruptcy Court's dismissal of the prior Chapter 11 Case and directive that future filings not occur until after conclusion of the Chancery Court Action. On June 9, 2021, Appellees filed their reply in support of dismissal. (Ch. 7 D.I. 29). The Petitioning Creditors filed two supporting declarations and more than 250 pages of exhibits three days after the objection deadline and less than 24 hours before the hearing. (*See* Ch. 7 D.I. 30, 31).

10. On June 10, 2021, the Bankruptcy Court granted Appellees' motion and dismissed the Chapter 7 Case ("Chapter 7 Dismissal Ruling"). Based on the "totality of the facts and circumstances" and the "arguments that were made by counsel ... and the pleadings submitted and the documents attached thereto," the Bankruptcy Court found that the Chapter 7 Petition "was filed

as another attempt by the parties to circumvent my [Chapter 11 Dismissal Order], gain some sort of litigation leverage over the secured lenders and the disputes in the Chancery Court, and essentially get another bite of the appl[e] to try and pursue the previously submitted plan and theories that are already considered and rejected in the prior Chapter 11 proceeding." (Chapter 7 Dismissal Ruling at 63:21-64:6).

11.     The Bankruptcy Court held that these findings "implicate[] and give[] rise to issues of divestiture and judicial economy and also amount[] to cause under [Bankruptcy Code] Section 707." (*Id*. at 64:7-9). The Bankruptcy Court also found that in the Chapter 11 Case the UCC "represented not only [the Petitioning Creditors'] interests but also the interests of all creditors in discharging its fiduciary duties and conclud[ed] . . . that going down the path suggested by the petitioning creditors, Stream and VTI would not be beneficial to the creditor body." (*Id*. at 64:13-18.) The Bankruptcy Court entered an order memorializing its ruling the same day (Ch. 7 D.I. 36, the "Chapter 7 Dismissal Order"). Stream did not seek a stay of the Chapter 7 Dismissal Order in the Bankruptcy Court.

12.     On June 22, 2021, Stream filed its notice of appeal (D.I. 1) along with the Emergency Stay Motion. On June 23, 2021, Petitioning Creditors filed their notice of appeal, which is currently pending before me at Civ. No. 21-899 (RGA) (D. Del.). On June 23, 2021, I entered an order setting an expedited briefing schedule on the Emergency Stay Motion. (D.I. 4). The Emergency Stay Motion is fully briefed. (D.I. 3, 13, 14).

13.     **Jurisdiction.** Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).

14.     **Discussion. "**The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc*., 2001 WL 1820325, at *2-3 (Bankr. D. Del.

Mar. 27, 2001).  Stream bears the burden of proving that a stay of the Chapter 7 Dismissal Order is warranted based on the following criteria: (1) whether the movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies.  *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).  The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal.  *In re Revel AC, Inc*., 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay?  If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach.  However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted).

15.     ***Likelihood of success on the merits.***  As to the first factor, Stream argues that divestiture presents no bar to its appeal because the Bankruptcy Court did not rule on the divestiture issue.  (D.I. 3 at 10).  According to Stream, the Bankruptcy Court's rulings were vague. "A reasonable inference should be drawn that the Bankruptcy Court believed it exercised jurisdiction over the Chapter 7 Case and dismissed the case for cause and not on jurisdictional grounds."  (D.I. 14 at 4). I disagree.  Regardless of whether the Bankruptcy Court ruled in the alternative or on multiple grounds, the Bankruptcy Court made clear its ruling on divestiture.  The Supreme Court has explained the divestiture rule as follows: "The filing of a notice of appeal is an event of

jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Judge Owens found the Chapter 7 Petition was filed to "circumvent" the Chapter 11 Dismissal Order, further impede the Chancery Court Action, and pursue the same reorganization plans Stream previously proposed in the dismissed Chapter 11 Case that is now on appeal before this Court. (*See* Chapter 7 Dismissal Ruling at 63:21-64:9 ("This implicates and gives rise to issues of divestiture and judicial economy and also amounts to cause under Section 707.")). The Bankruptcy Court thus concluded dismissal was warranted because it was divested of jurisdiction to administer the Chapter 7 Case by virtue of Stream's still pending appeal of the Chapter 11 Dismissal Order.

16.     As Appellees correctly point out, Stream fails to explain how the Bankruptcy Court can administer the Chapter 7 Case if a stay is granted. Stream argues that it "is absolutely permitted to seek a review of the Bankruptcy Court's ruling via the appeal process and there is nothing absurd about the potential outcomes." (D.I. 14 at 3). However, the relief sought by Stream in the Emergency Stay Motion – *i.e.*, staying the Chapter 7 Dismissal Order and thereby compelling the Bankruptcy Court to administer the same Chapter 7 Case over which it previously determined it does not have jurisdiction – cannot be granted. If, as Stream contends, the Bankruptcy Court erred in reaching that conclusion, Stream's recourse is to pursue reversal of that ruling on the merits in this appeal; but Stream cannot require the Bankruptcy Court, via a stay pending appeal, to administer a bankruptcy proceeding over which it has determined it lacks jurisdiction.

17.     Stream is now appealing both the Chapter 11 Dismissal Order and the Chapter 7 Dismissal Order. If relief is granted in both appeals, Stream will be in the anomalous (and absurd) position of being in Chapter 7 and Chapter 11 simultaneously. This potential scenario (and the risk of other contradictory rulings) provides a sound basis for dismissal of the Chapter 7 Case. *See*

*Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985) (divestiture rule designed to prevent "confusion and inefficiency which would of necessity result were two courts to be considering the same . . . issues simultaneously"). I find that Stream is unlikely to succeed in challenging the determination that Stream's pending appeal of the Chapter 11 Dismissal Order divested the Bankruptcy Court of jurisdiction to administer the Chapter 7 case.

18.     Stream raises other arguments that have little bearing on the Bankruptcy Court's substantive ruling. Stream argues that it was not permitted to argue in support of its objection to the motion to dismiss the Chapter 7 case. (*See* D.I. 3 at 10). This is belied by the record. Stream's counsel made a lengthy presentation. (*See* Chapter 7 Dismissal Ruling at 30:14-42:23). The Bankruptcy Court allowed Stream to participate at the hearing notwithstanding that its objection was filed several days after the objection deadline.

19.     Stream further argues that the Bankruptcy Court did not allow the Petitioning Creditors to offer evidence in opposition to the motion to dismiss the Chapter 7 case. (*See* D.I. 3 at 10). It is clear from the record, however, that the Bankruptcy Court gave the Petitioning Creditors significant leeway in presenting their case despite the fact that the Petitioning Creditors' objection and witness declarations were all filed after the objection deadline. And with respect to Reji Abraham, the Bankruptcy Court offered – and Petitioning Creditors' counsel declined – to have him testify.[2] (*See* Chapter 7 Dismissal Ruling at 29:20-30:6). Moreover, notwithstanding that the Petitioning Creditors filed the Christopher Michaels declaration (20 pages) and Stephen Blumenthal declaration (26 pages) the day before the June 10 hearing, the Bankruptcy Court still reviewed the written testimony provided in the declarations and specifically took the testimony into account in making her ruling. (*See id*. at 58:4-14 ("I'm going to take a break and I will let

---

[2] Stream did not respond to this point in its Reply.

you know if I need further evidence, although I did read the declarations and I understand what the position is that you're putting forth with those declarations … I'm not sure if I need actual testimony on that issue given that you filed the declarations and I read those."); *see also id*. at 63:13-17 ("I've concluded that I don't need Mr. Michaels' testimony because even considering and giving weight to the contents of his declaration as well as those of the declaration of Mr. Blumenthal, I would still come to the same conclusion which is that this proceeding must be dismissed." (emphasis added)).)

20.     Finally, Stream argues that the Bankruptcy Court did not afford proper evidentiary weight to, among other things, Stream's attempt to hire a restructuring officer, obtain debtor in possession financing, and its proposed plan.  (*See* D.I. 3 at 11).  Judge Owens rejected these arguments in the Chapter 11 Case and specifically ruled in the Chapter 7 Case that she was again rejecting them as an attempt to re-litigate and circumvent her prior dismissal order.  (Chapter 7 Dismissal Ruling at 63:24-64:6).)  According to Stream, it made clear in the Chapter 7 case that it is "prepared to a be a chapter 11 debtor, to hire a chief restructuring officer who will use post-petition secured financing to re-start the business operations, re-hire the furloughed employees, and operate the business for the benefit of all its creditor constituencies, which will include a chapter 11 bankruptcy plan that will pay all creditors in full, including the Appellees."  (D.I. 14 at 3).  Stream argues that most of Appellees' assertions to the contrary constitute extraneous information not germane to the issues on appeal and not part of the factual record.  (*Id.*)

21.     As Appellees correctly point out, the fundamental problem with Stream's position is that it challenges the Chapter 7 Dismissal Ruling as if Stream's participation in the Chapter 7 Case was the first time the Bankruptcy Court had evaluated the facts and circumstances surrounding Stream's filing for bankruptcy.  (D.I. 13 at 9-10).  Stream argues that the Bankruptcy Court improperly "relied on its insights from the Chapter 11 Case to provide support for its findings

in the Chapter 7 Case, which was a completely separate matter initiated by three separate and independent creditors of the Debtor." (D.I. 14 at 5). In *Tamecki,* the Third Circuit held that a debtor's lack of good faith in filing a bankruptcy petition is a proper cause for dismissal under section 707(a).[3] *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). And the Third Circuit imposes a "non-restrictive approach" which "reflects the fact-intensive nature of the good-faith inquiry." *Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364, 372-73 (3d Cir. 2007). "An assessment of a debtor's good faith requires consideration of all of the facts and circumstances surrounding the debtor's filing for bankruptcy." *Id.* (citing *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 118 (3d Cir. 2004)). Indeed, "The facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases." *In re Bingham*, 68 B.R. 933, 935 (Bankr. M.D. Pa. 1987).

22. Based on its consideration of the totality of facts and circumstances, the Bankruptcy Court determined that Stream was using the Chapter 7 Case to rehash the same arguments the Bankruptcy Court heard and rejected in the Chapter 11 Case after weeks of discovery and a two-day trial. (*See id.* at 64:1-6). Notably, after having its Chapter 11 case dismissed, the Chapter 7 case was filed less than a week later with the express intention of converting to Chapter 11. Stream is unlikely to succeed in establishing that the Bankruptcy Court's consideration of these facts and circumstances was somehow improper.

23. Stream falls short of demonstrating the Bankruptcy Court abused its discretion in dismissing the Chapter 7 Case for cause. Courts have exercised discretion to dismiss under § 707(a) where the case is in essence a two-party dispute capable of resolution in another forum; where judicial economy and efficiency favor dismissal; and where the petitioner exhibits bad faith.

---

[3] The bankruptcy court may dismiss for cause a case filed under Chapter 7 after notice and a hearing. *See* 11 U.S.C. § 707(a).

*See, e.g., In re Bilzerian*, 258 B.R. 850, 858 (Bankr. M.D. Fla. 2001), *aff'd*, 276 B.R. 285 (M.D. Fla. 2002). Here, the Bankruptcy Court determined that the dispute between SeeCubic and Stream amounted to a two-party dispute; and the parties including the Petitioning Creditors were seeking "to try and pursue the previously submitted plan and theories that are already considered and rejected in the prior Chapter 11 proceeding" pending on appeal – such that judicial economy dictated dismissal. (Chapter 7 Dismissal Ruling at 64:4-8). These findings are supported by the record, and Stream has demonstrated no basis for a finding that the Bankruptcy Court abused its discretion.

24. In sum, Stream has not met its burden of making "a strong showing" that it is likely to succeed on appeal with respect to any the errors alleged.

25. ***Irreparable harm to Stream absent a stay.*** To establish that it will suffer irreparable harm in the absence of a stay, Stream must establish a resulting injury "that cannot be redressed by a legal or equitable remedy." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989). Stream argues that, absent a stay, it faces "the wrath of merciless Secured Creditors," which intend to leave "all of the liabilities of [Stream] behind" for their sole benefit. (D.I. 3 at 12). Stream seems to be alluding to an impending ruling in SeeCubic's favor in the Chancery Court Action. However, irreparable harm is an injury that "cannot be redressed by a legal or equitable remedy following a trial." *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co*., 290 F.3d 578, 595 (3d Cir. 2002). A stay must be the only way of protecting the movant from harm. *See Campbell Soup Co. v. ConAgra, Inc*., 977 F.2d 86, 91 (3d Cir. 1992). I agree with Appellees that there is no harm, let alone irreparable harm, associated with allowing the Chancery Court Action – which Stream initiated – to proceed. Nothing in the Chapter 7 Dismissal Order prevents Stream from exercising its full panoply of rights in the Chancery Court Action.

26. Absent the imposition of a stay, Stream further argues, it "not only faces an existential threat to its business, but also to its existence, which will only harm the Debtor's creditors, and in particular the general unsecured creditors who are owed approximately $25 million and who are going to be paid in full under the Debtor's proposed plan." (D.I. 3 at 12). However, as the Bankruptcy Court ruled in connection with the Chapter 11 Dismissal Order, it is undisputed that "the debtor entered these proceeding[s] without any business operations, employees, cash, income, or ability to generate revenue." (Chapter 11 Dismissal Ruling at 11:24-12:3 (emphasis added)). Stream has failed to carry its burden to allege irreparable harm that is actual and imminent.

27. Having evaluated Stream's likelihood of success on the merits and irreparable injury absent a stay, and having determined that Stream has failed to carry its burden as to either element, no further analysis is required. *See Revel AC*, 802 F.3d at 571. Nonetheless, I find that the remaining factors further weigh against granting the Emergency Stay Motion.

28. ***Balance of the harms***. The Third Circuit instructs courts to "weigh the likely harm to the movant (absent a stay) . . . against the likely irreparable harm to the stay opponent(s) if the stay is granted . . . ." *In re Revel*, 802 F.3d at 569. As to its own harms, Stream alleges that, unless a stay is imposed, Appellees "will abscond with the property of the estate and leave the Debtor a hollow shell company with only certain assets and a slew of unpaid remedy-less unsecured creditors." (D.I. 3 at 13). In addition, Stream argues, it continues to litigate against the Chancery Court ruling, and a stay will allow Stream to "consolidate all legal and factual issues in one appeal before one court." (*Id*.) As to the balance of the harms, Stream simply alleges that Appellees "are not likely to face any irreparable harm if a stay is granted." (D.I. 3 at 12). SeeCubic disagrees, arguing that Stream's "successive legal proceedings ha[ve] a real and meaningful impact on its ability to operate its business and build and maintain necessary relationships and trust with

its vendors, customers, and other stakeholders." (D.I. 13 at 12). According to SeeCubic, a stay further impairs its rights under the Omnibus Agreement and its ability to obtain a ruling in the Chancery Court Action, and is contrary to the Bankruptcy Court's instruction that the Chancery Court Action be resolved before the filing of any future bankruptcy cases. (*See* Chapter 11 Dismissal Ruling at 19:25-20:2). SeeCubic argues that it should not be forced to bear the burden of a (second) appeal and wait even longer before obtaining a ruling from the Chancery Court. I agree that the balance of the harms weighs against granting a stay pending appeal. Denying the Emergency Stay Motion will simply allow the Chancery Court Action to proceed and offer clarity to all parties.

29. ***Public interest.*** Stream argues a stay will preserve its ability to convert this Chapter 7 Case to one under Chapter 11, and implement the same alleged business plan proposed by Stream in the Chapter 11 Case which will benefit "other stakeholders of the estate" – *i.e.*, unsecured creditors. (D.I. 3 at 13). The record reflects, however, that the UCC appointed in the Chapter 11 Case represents the interests of all unsecured creditors as a fiduciary, and that, in the Chapter 11 context, the UCC "concluded that going down the path suggested by the petitioning creditors, Stream and VTI would not be beneficial to the creditor body." (Chapter 7 Dismissal Ruling at 64:13-18). I agree with Appellees that Stream's desire to substitute its own – or the Petitioning Creditors' – views for the careful examination of the UCC by filing another petition does not support the public interest. Rather, the public interest is served by respecting the fiduciary role served by the UCC on behalf of unsecured creditors.

30. **Conclusion.** The Bankruptcy Court correctly concluded that Stream's pending appeal of the Chapter 11 Dismissal Order divested the Bankruptcy Court of jurisdiction to administer the Chapter 7 case. Stream has failed to show a likelihood of success on appeal on the

other issues it has raised and has further failed to establish that it will suffer irreparable harm in absence of a stay.  The remaining factors further weigh against granting Stream the relief sought.

NOW, THEREFORE, it is HEREBY ORDERED that the Emergency Stay Motion (D.I. 3) is DENIED.

Entered this 1st day of July, 2021.                          _/s/ Richard G. Andrews____
                                                                                      United States District Judge